UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAVIS ANTHONY JR.,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>Defendants. | Case No. 19-CV-08303-LHK<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |

Before the Court is Defendants County of Santa Clara, Ezra Hunter, Cindy Chavez, and Sheriff Laurie Smith's (collectively, "Defendants") motion to dismiss Plaintiff Javis Anthony Jr.'s ("Plaintiff") third amended complaint. ECF No. 49 ("Mot.").[1] Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Defendants' motion to dismiss with leave to amend.

**I. BACKGROUND**

**A. Factual Background**

---

[1] Defendants' motion to dismiss contains a notice of motion paginated separately from the memorandum of points and authorities in support of the motion. ECF No. 54, at 1. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

1

Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

### 1. The Parties

Plaintiff was incarcerated by the County of Santa Clara ("the County") from January of 2018 to May of 2019, prior to Plaintiff's no-contest plea.[2] Third Amended Complaint, ECF No. 49 ("TAC"), at ¶ 6; ECF No. 42, at 9. Plaintiff suffers from a seizure disorder, autism, attention deficit hyperactivity disorder, and low IQ. Plaintiff has suffered from these disabilities since at least 2007. *Id.* at ¶ 16. Plaintiff has received medical treatment for these disabilities since at least November 13, 2007, which was eleven years prior to his incarceration. *Id.* at ¶ 6 Prior to being incarcerated, Plaintiff received medical evaluations, special education services, and medical and mental health services, all related to his disabilities. *Id.* Plaintiff's conditions have interfered with and limited Plaintiff's ability to engage in major life events such as sleeping, performing manual tasks, and working. *Id.* at ¶ 18.

Michelle Choates ("Choates") is Plaintiff's mother. *Id.* at ¶ 15. Choates originally brought this case on behalf of Plaintiff as his conservator.

The County operates and manages the Santa Clara County Main Jail Complex ("Main Jail") and the Elmwood Men's Correctional Complex ("Elmwood Facility"). *Id.* at ¶ 7. The County employs the individuals who supervised Plaintiff while he was incarcerated at the Main Jail and Elmwood Facility. *Id.*

Cindy Chavez ("Chavez") is the President of the Board of Supervisors for the County of Santa Clara. *Id.* at ¶ 28. Laurie Smith ("Smith") is the Sheriff of Santa Clara County. *Id.* at ¶ 30. Ezra Hunter is a correctional sergeant employed by the County. *Id.* at ¶ 8; Mot. at 7.

### 2. Plaintiff's Incarceration and Treatment

Plaintiff began his incarceration in January of 2018. Prior to the start of his incarceration, Choates informed the County that Plaintiff was a person with disabilities. *Id.* at ¶ 19.

According to Plaintiff, he was severely overmedicated from his first day at the "Elmwood

---

[2] The allegations in Plaintiff's third amended complaint involve conduct that took place before Plaintiff pled no-contest to the charges that led to his incarceration. *See* ECF No. 42, at 5. Plaintiff's third amended complaint does not clarify the nature of Plaintiff's detention and refers to his status during this period as "incarceration." *See, e.g.*, TAC at ¶ 19.

2
Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

Facility and at the Main Jail, including with, but not limited to, excessive multiple daily doses of powerful drugs such as Zoloft and Risperdal." *Id.* at ¶ 24.

Plaintiff further alleges that this overmedication led to Plaintiff suffering a seizure and trauma on December 25, 2017, at which point he was rushed to the hospital. Plaintiff remained in the hospital until December 28, 2017. *Id.* at ¶ 25. Defendants did now allow Plaintiff to attend prescribed follow-up appointments with a physician. *Id.* at ¶ 26. The Court notes that these dates are inconsistent with Plaintiff's allegation that he was incarcerated beginning in January of 2018. *Id.* at ¶ 6.

Choates allegedly notified Defendants on several occasions of Plaintiff's overmedication. Specifically, on February 7, 2018, Choates submitted an administrative complaint to the officer in charge of Plaintiff's housing unit, which claimed that Plaintiff was overmedicated and "was having trouble maintaining his balance, was losing weight rapidly, and was chronically dehydrated as a result of the medication." *Id.* at ¶ 29.

On February 8, 2018, Choates emailed Smith with Choates' concerns regarding Defendants' failure to provide appropriate accommodations for Plaintiff. *Id.* at ¶ 30. Having received no reply, Choates sent a second email to Smith on February 9, 2018, stating that "[a]nother incident took place this morning." *Id.* at ¶ 31. Next, on February 10, 2019, Choates sent another email to Smith to raise concerns of Plaintiff's "mistreatment while incarcerated." *Id.* at ¶ 32; ECF No. 49-2, at 2. Finally, on February 12, 2018, Choates emailed Smith alleging that when Choates visited Plaintiff his pupils were dilated. As a result, Choates expressed concern that Plaintiff was being inappropriately medicated or was under the influence of a substance. *Id.* at ¶ 33.

On February 22, 2018, during a visit with Plaintiff, Choates observed blood on Plaintiff's clothes and noticed that Plaintiff had dilated pupils. Plaintiff was on crutches with a foot injury and had allegedly returned from a hospital visit. *Id.* at ¶ 35. Defendants did not allow Plaintiff to attend prescribed follow-up appointments. *Id.* at ¶ 37. Choates reported to the County that conditions at the Main Jail were inadequate and inhumane. *Id.* at ¶ 36.

3

Defendants allegedly retaliated by placing Plaintiff in solitary confinement. Defendants also moved Plaintiff from the Elmwood Facility to various locations at the Mail Jail. *Id.* at ¶ 38. Furthermore, Defendants allegedly prevented Plaintiff from being able to use his inmate account fund at the jail commissary.

On March 2, 2018, Choates emailed Smith with complaints that Plaintiff was being moved back and forth between facilities. *Id.* at ¶ 40. On March 3, 2018, Choates emailed Smith to complain about the condition of Plaintiff's cell. *Id.* at ¶ 41. On March 12, 2018, Choates emailed Hunter to voice Choates' concern that Plaintiff was subjected to retaliation because Choates filed a complaint. *Id.* at ¶ 42.

On March 16, 2018, Choates filed a second administrative complaint with the director of Plaintiff's housing unit regarding violations of Plaintiff's rights and ongoing inhumane treatment. *Id.* at ¶ 43. On that same day, Choates sent an email to Hunter voicing Choates' concerns that Plaintiff could not purchase items from the jail's commissary. *Id.* at ¶ 39. On April 13, 2018, Choates sent a follow up email to Smith and Chavez. This email alleged that the Main Jail had "not corrected ongoing problems that have caused the denial of civil rights related to Javis' rights while incarcerated." *Id.* at ¶ 44; ECF No. 49-7, at 3.

On October 12, 2018, Plaintiff was again hospitalized due to a seizure. Plaintiff alleges that the seizure was caused by overmedication. *Id.* at ¶ 45. Plaintiff was not permitted by Defendants to attend follow-up appointments with a physician.

On April 3, 2019, Choates had a conference call with Chavez to inform Chavez of Choates' concerns regarding Plaintiff's care. *Id*. at ¶ 47. Plaintiff does not allege what concerns Choates raised with Chavez. *Id*.

Plaintiff alleges that on another occasion, Plaintiff was rushed to the hospital after suffering a seizure during a court appearance. *Id*. at ¶ 48. However, Plaintiff does not provide a date for this event. *Id.*

Defendants also allegedly denied Choates' requests for reasonable accommodations for Plaintiff's disabilities, "including but not limited to, sleeping, eating, showering, toileting,

4

exercising, safety, security, as well as participating in programs such as recreational, television, and social programs. *Id.* at ¶ 21. Plaintiff does not provide dates for the denial of these requests. *Id.*

Finally, Plaintiff was allegedly "subjected to multiple 5150 (involuntary hold for 72 hours for being a danger to themselves or others) and 5250 (involuntary 72 hour hold if a person is, after a 72-hour hold, still deemed to be a danger to others or themselves, or is gravely disabled) psychiatric holds without cause." *Id.* at ¶ 22. Plaintiff does not provide a date for these holds.

**B. Procedural Background**

Choates, the mother of the real party in interest, initiated the instant case *pro se* on December 19, 2019. ECF No. 1. Magistrate Judge Virginia K. DeMarchi initially denied without prejudice Choates' motion for appointment of counsel. ECF No. 8. On February 5, 2020, Choates filed a first amended complaint. ECF No. 10.

On February 25, 2020, Magistrate Judge DeMarchi referred Choates to the Federal Pro Se Program. ECF No. 15. On March 31, 2020, Judge DeMarchi appointed pro bono counsel to represent Choates and stayed this action through May 12, 2020. ECF No. 16.

On May 4, 2020, this action was reassigned to this Court. ECF No. 19.

On June 10, 2020, Choates filed a second amended complaint, alleging causes of action for: (1) deliberate indifference to serious medical needs in violation of the Eighth Amendment against all Defendants pursuant to 42 U.S.C. § 1983; (2) violations of Title II of the Americans with Disabilities Act against the County pursuant to 42 U.S.C. § 12101 *et seq.*; (3) violations of Section 504 of the Rehabilitation Act against the County pursuant to 29 U.S.C. § 794. ECF No. 24, at ¶¶ 49–83.

On August 24, 2020, Defendants filed a motion to dismiss. ECF No. 42. On September 4, 2020, the parties filed a joint stipulation to amend the complaint. ECF No. 45. The parties stipulated to allow Choates to file a third amended complaint substituting Javis Anthony Jr. ("Plaintiff") as plaintiff and amending the deliberate indifference claim to reflect that it is brought under the Fourteenth Amendment rather than the Eighth Amendment. *Id.* at 1.

5

Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

On October 26, 2020, Plaintiff filed a third amended complaint with the stipulated amendments. Third Amended Complaint, ECF No. 49 ("TAC").

On November 16, 2020, Defendants filed a motion to dismiss. ECF No. 54 ("Mot."). On November 30, 2020, Plaintiff filed an opposition. ECF No. 45 ("Opp."). On December 7, 2020, Defendants filed a reply. ECF No. 57 ("Reply").

## II. LEGAL STANDARD

### A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere

"conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

Plaintiff alleges three claims against Defendants in the third amended complaint: (1) a claim for deliberate indifference against the County, Chavez, Smith, and Hunter; (2) a claim for violations of the Americans with Disabilities Act ("ADA") against the County; and (3) a claim for violations of Section 504 of the Rehabilitation Act against the County. TAC at ¶¶ 49–83. In the instant motion to dismiss, Defendants argue that each of Plaintiff's three claims fail to state a claim and therefore should be dismissed under Rule 12(b)(6). Mot. at 1. Plaintiff argues in opposition that the third amended complaint contains sufficient allegations to survive a motion to dismiss on each claim. The Court addresses each claim in turn.

### A. Claim for Deliberate Indifference

Plaintiff's first claim alleges that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Fourteenth Amendment. TAC at ¶¶ 50–60. Plaintiff

7
Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

brings this claim pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants argue that Plaintiff has failed to state a claim for deliberate indifference with respect to both the individual defendants (Smith, Chavez, and Hunter) and the County. Mot. at 5. The Court begins by examining Plaintiff's deliberate indifference claim against each of the individual defendants.

### 1. Individual Defendants

Defendants first allege that Plaintiff has failed to allege a deliberate indifference claim against each of the three individual defendants. Specifically, Defendants argue that Plaintiff has failed to state a deliberate indifference claim against the individual defendants for three reasons. First, Plaintiff does not allege that Plaintiff received constitutionally inadequate medical care; (2) Plaintiff fails to identify facts establishing that any individual defendant directly participated in Plaintiff's care or recklessly ignored the risk that Plaintiff's treatment plan created; and (3) Plaintiff has failed to establish adequate causation. Mot. at 5–7. The Court finds that arguments one and two are dispositive of Plaintiff's claim for deliberate indifference against the individual defendants, and so the Court does not reach Defendants' third argument.

The Ninth Circuit has clarified that "the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Moreover, "[w]ith respect to the third element, the defendant's

8

Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

conduct must be objectively unreasonable." *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). Accordingly, 'the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks omitted).

The Court now addresses Defendants' arguments that Plaintiff has failed to state a claim for deliberate indifference against the individual defendants.

### a. Constitutionally Inadequate Medical Care

Defendants first argue that Plaintiff has failed to state a claim for deliberate indifference against the individual defendants because Plaintiff has failed to allege that Plaintiff received constitutionally inadequate medical care. Mot. at 5. Specifically, Defendants argue that although Plaintiff's third amended complaint alleges that Plaintiff was "overmedicated," it does not explain what that means. Defendants argue that the third amended complaint provides even fewer details regarding the alleged "trauma" that Plaintiff suffered. *Id.* According to Defendants, [a]lleging that a plaintiff was 'overmedicated' and experienced 'trauma,' without more, is not meaningfully different than rotely declaring a detainee's medical care was 'unconstitutional.'" Mot. at 6. Finally, Defendants argue that Plaintiff has alleged insufficient facts to state a claim for deliberate indifference for a broken foot and for abrasions that Plaintiff allegedly suffered. *Id.* at 3. Thus, Defendants argue, Plaintiff has provided only bare, conclusory allegations that Plaintiff suffered an injury, rather than any substantive allegations that Plaintiff's harm resulted from substandard medical care.

In opposition, Plaintiff argues that the third amended complaint adequately alleges that Plaintiff received constitutionally inadequate medical care. Opp. at 7. Specifically, Plaintiff argues that the third amended complaint alleges that Plaintiff was severely overmedicated from his first day of incarceration, and that Plaintiff's overmedication consisted of "excessive multiple daily doses of powerful drugs such as Zoloft and Risperdal." *Id.* at 8 (quoting TAC at ¶ 24). Furthermore, Plaintiff argues that the third amended complaint alleges that this overmedication led to multiple seizures and hospitalizations. *Id.* Plaintiff argues that these allegations are more than

9
Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

bare, conclusory allegations, and are sufficient to plead constitutionally inadequate medical care at the motion to dismiss stage.

The Court agrees as to Plaintiff's allegations regarding overmedication. "[C]onstru[ing] the pleadings in the light most favorable to the nonmoving party," *Manzarek*, 519 F.3d at 1031, Plaintiff has sufficiently alleged that he was overmedicated and that this overmedication consisted of "excessive multiple daily doses of powerful drugs such as Zoloft and Risperdal." TAC at ¶ 24. Plaintiff further alleges that this overmedication led to multiple seizures and hospitalizations. *Id.* These facts are sufficient at the motion to dismiss stage to allege that Plaintiff's medical care placed Plaintiff "at substantial risk of suffering serious harm," *Gordon*, 888 F.3d at 1124, and that Plaintiff's treatment was therefore "medically unacceptable." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). Thus, Plaintiff has pled sufficient allegations regarding constitutionally inadequate medical care due to Plaintiff's overmedication.

However, the Court agrees with Defendants that Plaintiff has failed to provide sufficient allegations regarding inadequate medical care in relation to Plaintiff's broken foot. *See* TAC at ¶ 35. In fact, Plaintiff acknowledges in his opposition brief that "Plaintiff does not have sufficient facts to support a claim of deliberate indifference in connection with the broken foot." Opp. at 12 n.5. Accordingly, Plaintiff has failed to state a claim for deliberate indifference based on constitutionally inadequate medical care for Plaintiff's broken foot.

Finally, Plaintiff's opposition brief fails to defend Plaintiff's claim of deliberate indifference due to abrasions that Plaintiff allegedly suffered. Plaintiff has therefore abandoned his claim for deliberate indifference based on abrasions. *See Lesnik v. Eisenmann SE*, 2018 WL 4700347, at *6 (N.D. Cal. Oct. 1, 2018) (explaining that plaintiffs failed to defend claim in opposition brief and "[p]laintiffs' silence indicates they have abandoned this theory.").

### b. Individual Defendants' Participation in Plaintiff's Care

Second, Defendants argue that Plaintiff has failed to state a claim with respect to the individual defendants because Plaintiff has failed to allege that any individual defendant participated in Plaintiff's care or recklessly ignored risks that Plaintiff's treatment created. Mot. at

10

Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

6.

Plaintiff does not argue that any of the individual defendants directly participated in Plaintiff's medical care. Rather, Plaintiff argues that the third amended complaint alleges that Choates repeatedly warned the individual defendants that Plaintiff was overmedicated and receiving deficient treatment. Opp. at 10–11. Specifically, Plaintiff argues that Choates sent multiple communications to "Chavez and Smith" that alerted Chavez and Smith to "the exact medical problems identified above as constituting the constitutionally deficient medical treatment." *Id.* at 10. Plaintiff therefore argues that the individual defendants failed to address Plaintiff's inadequate medical treatment after Choates warned them of Plaintiff's inadequate care. *Id.*

A supervisory official may be held liable under Section 1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotation marks and citation omitted)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207–08).

Defendants argue that Plaintiff has failed to meet this standard for each of the three individual defendants. The Court discusses each of the individual defendants in turn.

First, the Court agrees with Defendants that Plaintiff has failed to allege that Hunter received any communications from Choates regarding Plaintiff's inadequate medical care. The third amended complaint alleges that Choates sent emails to Hunter concerning Plaintiff's commissary credits and housing, not overmedication. *See* TAC at ¶¶ 39, 42; ECF No. 49-4 ("Ex. D"); ECF No. 49-6 ("Ex. F"). Plaintiff has therefore failed to adequately plead that Hunter participated in Plaintiff's inadequate medical care or "knowingly refus[ed] to terminate a series of

11

Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

acts by others, which [Hunter] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez*, 891 F.3d at 798. Accordingly, Plaintiff has failed to state a claim for deliberate indifference against Hunter.

Second, although Plaintiff argues in opposition that both "Chavez and Smith" received "multiple communications" from Choates that alerted them to the fact that Plaintiff was not "being appropriately medicated," the third amended complaint does not reflect that allegation with respect to Chavez. Opp. at 10. Rather, the third amended complaint alleges that Chavez received three emails from Choates. Chavez allegedly received two emails regarding Plaintiff's commissary credits and housing that were also sent to Hunter. *See* Ex D; Ex F. Chavez was also sent a third email from Choates, but that email states only that there are "ongoing problems that have caused the denial of civil rights related to [Plaintiff's] rights while incarcerated." TAC at ¶ 44; ECF No 49-7, at 3 ("Ex. G"). The email does not mention overmedication, seizures, or any other issues related to Plaintiff's medical care. Finally, the third amended complaint alleges that Choates "had a conference call with Chavez informing her about her concerns and the circumstances regarding her son's conditions." *Id.* at ¶ 47. However, the third amended complaint does not allege that Choates informed Chavez of any concerns regarding Plaintiff's overmedication.

As such, Plaintiff has failed to adequately allege that Chavez had any knowledge of Plaintiff's inadequate medical care. Accordingly, Plaintiff has failed to adequately plead that Chavez participated in Plaintiff's inadequate medical care or "knowingly refus[ed] to terminate a series of acts by others, which [Chavez] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez*, 891 F.3d at 798. As such, Plaintiff has failed to state a claim for deliberate indifference against Chavez.

Finally, with respect to Smith, Defendants argue that (1) Choates' communications to Smith were insufficient to place Smith on notice of the allegedly inadequate medical care, and (2) even if Choates had been properly notified, Plaintiff has failed to allege that Smith acted with reckless disregard with respect to Plaintiff's inadequate medical care. Reply at 5–6.

As to Defendants' first argument, the Court finds that Plaintiff has adequately alleged that

12

Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

Choates informed Smith of Plaintiff's overmedication. For example, in one email that Choates sent to Smith, Choates explained that she visited Plaintiff that morning and "his pupils are huge. I am concerned that he is not being appropriately medicated or under the influence of something. This is a huge concern!" TAC at ¶ 33; ECF No. 49-3 ("Ex. C"), at 2. This is sufficient at the motion to dismiss stage to plead that Choates alerted Smith to concerns regarding Plaintiff's overmedication.

However, Smith is a supervisor and had no direct participation in Plaintiff's medical care. Therefore, Plaintiff must allege that Smith's conduct was "objectively unreasonable," which the Ninth Circuit has defined as "more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125; *see also Wortham v. Waldura*, 2020 WL 5630269, at *3 (N.D. Cal. Sep. 21, 2020) (explaining that for a deliberate indifference claim, "plaintiff must demonstrate that Defendants' actions were more than merely negligent and were objectively unreasonable.").

Here, Plaintiff has failed to allege that Smith's conduct demonstrated "reckless disregard" for Plaintiff's inadequate medical care. After Choates informed Smith of Choates' concerns regarding Plaintiff's medical care, Smith's assistant emailed Choates on Smith's behalf. That email informed Choates that the "Director of Adult Custody Health" at the Main Jail had assigned an individual to be Choates' "point of contact relating to any concerns you have regarding the provision of medical/mental health." TAC at ¶ 44; ECF No. 49-7 ("Ex. G"), at 3. This communication suggests that Smith contacted medical personnel at the Main Jail in response to Choates' complaints. Smith's decision to contact the Director of Adult Custody Health at the Main Jail after learning of Choates' concerns does not demonstrate that Smith exhibited "reckless disregard" with respect to Plaintiff's medical care. Furthermore, the third amended complaint fails to allege any other facts that demonstrate that Smith acted with "reckless disregard" with respect to Plaintiff's medical care. Accordingly, the Court finds that Plaintiff has failed to state a claim for deliberate indifference against Smith.

As such, the Court finds that Plaintiff has failed to adequately state a claim for deliberate

13

Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

1 indifference against each of the individual defendants.

### 2. The County

Defendants next argue that Plaintiff has failed to state a claim for deliberate indifference against the County itself. Mot. at 8–10. Plaintiff argues that the third amended complaint sufficiently alleges that the County has a policy and practice of overmedicating inmates and not taking inmates to follow-up appointments. Plaintiff argues that the third amended complaint also adequately alleges that the County has failed to adequately train its staff. Op. at 12.

A municipality is not vicariously liable for its employee's tortious conduct. Rather, a municipality is liable where that conduct occurred "pursuant to official municipal policy of some kind." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Therefore, to state a claim for deliberate indifference against the County, Plaintiff must (1) show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and (2) "demonstrate that the custom or policy was adhered to with deliberate indifference to the constitutional rights of the jail's inhabitants." *Castro*, 833 F.3d at 1075–76. The deliberate indifference standard for municipalities is an "objective standard." *Id.* at 1076. This "objective standard is satisfied when a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens.'" *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248–49 (9th Cir. 2016) (quoting *Castro*, 833 F.3d at 1076) (alteration in original).

Defendants argue that Plaintiff has failed to adequately allege that the County has a policy and practice of overmedicating inmates and not taking inmates to follow-up appointments. Mot. at 9. Specifically, Defendants argue that Plaintiff has cited only his own experiences, which are insufficient to demonstrates a policy or practice. In opposition, Plaintiff argues that the third amended complaint alleges that "that the County has a policy or practice of overmedicating inmates and not taking inmates to follow-up appointments," and that Choates brought the failure of this policy to the attention of policymakers, including Smith. Opp. at 13. Plaintiff further

14
Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

argues that the County took no corrective measures in response to these complaints, and the County's failure to take corrective measures "is either the result of a policy and procedure of the County, or a failure to adequately train and supervise its employees." *Id.*

The Court agrees with Defendants that Plaintiff has failed to allege sufficient facts to support a claim that the County has a policy or practice of overmedicating its inmates or a policy or practice of not taking inmates to follow-up appointments. The third amended complaint alleges that "the County has a policy and practice of overmedicating its inmates," and that "the County has a longstanding policy and practice of not ensuring inmates have access to timely medical care." TAC at ¶¶ 53, 54. In support of these allegations Plaintiff cites only his own allegations that he was overmedicated by County employees and not taken to follow-up medical appointments. Plaintiff does not allege that any other detainees were treated in the same manner. Plaintiff also does not offer any evidence that Plaintiff's treatment was pursued in accordance with an official or de facto policy.

The two main cases that Plaintiff cites illustrate this deficiency. In *Steel v. Alameda County Sheriff's Office*, Alameda County had signed a contract to outsource its medical care of detainees to a private firm. 428 F. Supp. 3d 235, 239 (N.D. Cal. 2019). As a result of the terms of this contract, the private firm had an incentive to refuse and withhold hospitalization services to inmates, including plaintiff. *Id.* at 240. Plaintiff was refused hospitalization and suffered inadequate medical care as a result. The Court found that Alameda County's contract with the private firm constituted an official policy that gave rise to liability. *Id.* at 242. In the instant case, Plaintiff has failed to allege any such contract or official policy that led to Plaintiff's inadequate medical care.

In *Merino v. County of Santa Clara*, plaintiff alleged that the county had a policy or practice of not ensuring that inmates had access to timely medical care. 2019 WL 2437176, at *8 (N.D. Cal. June 11, 2019). Plaintiff supported this allegation by pleading that plaintiff's experience was not unique and other inmates experienced the same issues regarding access to timely medical care. The Court found that these pleadings were sufficient to state a claim that the

15
Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

county had a policy of not providing timely medical care. *Id.* In the instant case, Plaintiff has not alleged that any other detainee was overmedicated or otherwise subjected to the inadequate medical care that Plaintiff alleges.

In response to this deficiency, Plaintiff's opposition brief states that "based on discovery following the filing of the Complaint, Plaintiff has developed facts relating to Defendants' expressed policies for medicating inmates suffering from sleeping problems that led directly to the harm suffered by Plaintiff." Opp. at 13 n.6. However, the Court may not consider allegations not found in Plaintiff's third amended complaint on a motion to dismiss. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Plaintiff's allegations that the County failed to train its employees are similarly deficient. To state a claim for failure to train, "[a] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks and citation omitted). Furthermore, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* Here, Plaintiff has failed to identify "[a] pattern of similar constitutional violations by untrained employees." *Id.* Moreover, Plaintiff has failed to identify which employees were inadequately trained or how specifically the inadequacies of those employee's training "amount[ed] to deliberate indifference" on the part of the County. *Id.* Rather, the third amended complaint alleges only that the County failed "to adequately train and/or supervise its staff on how to respond to requests for medical care." TAC ¶ 55. These bare, conclusory allegations are insufficient to state a claim for deliberate indifference against the County for failure to train.

As such, the Court finds that Plaintiff has failed to state a claim for deliberate indifference against the County.

16
Case No. 19-CV-08303-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND

In sum, Plaintiff has failed to adequately state a claim for deliberate indifference against the individual defendants and the County. Accordingly, Defendants' motion to dismiss Plaintiff's deliberate indifference claim is GRANTED.

### B. Claims for Violation of the ADA and Rehabilitation Act

Finally, Defendants argue that Plaintiff has failed to state a claim against the County under both the ADA and the Rehabilitation Act.

To state a claim under the ADA, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal quotation marks omitted). To seek money damages for a violation, a plaintiff must establish that the alleged discrimination was intentional. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). A plaintiff satisfies the intentionality requirement by establishing that the public entity was deliberately indifferent. *Id.* This requires a showing of "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

The Court considers Plaintiff's ADA claim and Rehabilitation Act claim together because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," and so courts within the Ninth Circuit often examine ADA and Rehabilitation Act claims together. *Zukle v. Regents of University of California*, 166 F.3d 1041, 1046 n.11 (9th Cir. 1999).

Plaintiff's claims against the County for failure to provide necessary accommodations for Plaintiff's disability under the ADA and Rehabilitation Act are not entirely clear. For example, Plaintiff's third amended complaint alleges that Plaintiff "was deprived of accommodations for his disabilities, such as sleeping, eating, showering, toileting, exercising, safety, security, as well as

17

1    participating in programs such as recreational, television, and social programs, throughout his

2    entire stay at the Main Jail and the Elmwood Facility." TAC at ¶ 21. Plaintiff later alleges that he

3    "was denied these accommodations on the basis of his disability," and that "full and meaningful

4    access" would include "the cessation of overmedicating [Plaintiff]" and "the ability for [Plaintiff]

5    to attend follow-up appointments." *Id.* at ¶ 68.

6          The Court agrees with Defendants that these allegations fail to state a claim for violation of

7    the ADA or Rehabilitation Act because under Ninth Circuit precedent these statutes "prohibit[]

8    discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo

9    County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2019), *overruled on other grounds by Castro*, 833

10   F.3d 1060 (9th Cir. 2016); *see also Merino*, 2019 WL 2437176, at *9 ("The County is correct that

11   neither the ADA nor the Rehabilitation Act prohibit inadequate treatment of a disability."). "Some

12   courts have found that an outright and deliberate denial or refusal of access to medical care for a

13   qualifying disability may be actionable under the ADA and the RA." *Razon v. County of Santa

14   Clara*, 2018 WL 405010, at *10 (N.D. Cal. Jan. 12, 2018) (internal quotation marks omitted).

15   However, Plaintiff does not allege that the County denied him medical care outright for his

16   disability. Rather, Plaintiff has alleged that the County's medical care was inadequate.

17   Accordingly, Plaintiff's allegations are insufficient to state a claim under the ADA and

18   Rehabilitation Act on account of the County's inadequate medical care. *See Simmons*, 609 F.3d at

19   1022 (explaining that the ADA and Rehabilitation Act "prohibit[] discrimination because of

20   disability, not inadequate treatment for disability.")

21         Plaintiff's opposition brief argues that the County subjected Plaintiff to "unnecessary and

22   excessive medical holds and solitary confinement" in place of providing accommodations for

23   Plaintiff's disability. Op. at 15. However, Plaintiff's third amended complaint does not connect

24   Plaintiff's allegations regarding these "medical holds and solitary confinement" with Plaintiff's

25   claim that he was denied proper disability accommodations by the County. Rather, Plaintiff

26   merely alleges that Plaintiff was subject to these holds "without cause" and "without proper

27   justification." TAC at ¶ 22. Therefore, Plaintiff's allegations regarding "unnecessary and

28   
18

excessive medical holds and solitary confinement" are insufficient to state a claim under the ADA and the Rehabilitation Act.

In sum, the Court finds that Plaintiff has failed to state a claim under the ADA and Rehabilitation Act. Accordingly, Defendants' motion to dismiss Plaintiff's ADA and Rehabilitation Act claims is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's third amended complaint in its entirety is GRANTED. Because granting Plaintiff an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See Leadsinger*, 512 F.3d at 532.

Should Plaintiff choose to file an amended complaint, Plaintiff must do so within 30 days of this Order. Failure to do so, or failure to cure the deficiencies identified in this Order and in Defendants' motion to dismiss, will result in dismissal of Plaintiff's deficient claims with prejudice. Plaintiff may not add new claims or parties without a stipulation or leave of the Court. If Plaintiff chooses to file an amended complaint, Plaintiff must also file a redlined copy comparing the fourth amended complaint with the third amended complaint.

**IT IS SO ORDERED.**

Dated: May 5, 2021

_Lucy H. Koh_
LUCY H. KOH
United States District Judge